**UNITED STATES of America**

v.

**Aaron Eric WILLIAMS**

**No. 6:04–CR–111–ORL31JGG.**

United States District Court,
M.D. Florida,
Orlando Division.

May 5, 2005.

---

Tanya Davis Wilson, U.S. Attorneys Office, Orlando, FL, for U.S.

Clarence William Counts, Federal Public Defender's, Orlando, FL, for Aaron Eric Williams.

## MEMORANDUM SENTENCING OPINION

PRESNELL, District Judge.

Defendant, Aaron Eric Williams, is a 29 year old male who has engaged in a consistent pattern of criminal conduct since age 16. In his teenage years, he was charged on several occasions with assault and battery and possession of marijuana (PSR ¶¶ 31–35). In his 20s, this conduct continued. In addition to incidents of domestic violence, Williams sustained 8 convictions for the possession of, or possession with intent to distribute, illegal drugs (marijuana and cocaine). As a result of these drug offenses, he was sentenced to a total of approximately 3 1/2 years in state confinement (PSR ¶¶ 37–47). In essence, Williams has been, for many years, a petty drug dealer.

Apparently frustrated with the state's lenient treatment of Williams' drug offenses, the authorities decided to pursue a different approach-the draconian imprimatur of the federal drug laws. So, the DEA, in cooperation with the Osceola County Sheriff's office, used a confidential source to arrange for an undercover agent to buy crack cocaine from Williams. This was done on three separate occasions between April and July of 2003. On these occasions, Williams sold the agent a total of 34.8 grams of crack for a total price of $3,140. (PSR ¶ 10).

Armed with this evidence, which was captured on videotape, the government charged Williams in a three-count Indictment (Doc. 1). On the morning of trial, before the jury was empaneled, the government filed an Information (Doc. 45), pursuant to 21 U.S.C. § 851(a), indicating an intention to seek enhanced punishment. On February 1, 2005, the jury returned a verdict of guilty on all three counts (Doc. 43), and sentencing was scheduled for May 3, 2005.

On April 20, 2005, probation submitted a Presentence Investigation Report ("PSR"). In the PSR's guideline-sentence scoring,

Williams was credited with dealing 34.8 grams of crack, which produced an offense level of 28.[1] His criminal history was a category VI. A score of 28–VI would produce a guideline sentencing range of 140–185 months. Nevertheless, as a result of the career-offender enhancement under U.S.S.G. 4B1.1, compounded by the 21 U.S.C. § 851 enhancement, Williams' offense level was raised to 37, which produced a guideline sentencing range of 360 months to life.

At sentencing, defense counsel did not object to the factual content of the PSR, nor did he object to the scoring. Rather, he urged the Court to use its discretion under Booker[2] to fashion a just sentence, considering all the factors set forth in 18 U.S.C. § 3553.

In response, the government argued that any sentence, other than a guideline sentence, would be unreasonable (and thus illegal). This contention is consistent with the policy of the Department of Justice to oppose as unreasonable *any* sentence that falls below the applicable guideline sentencing range, save those the Department authorizes in its sole discretion.[3]

In *Booker*, the United States Supreme Court held the mandatory nature of the sentencing guidelines to be unconstitutional. Thus, post-*Booker*, the guidelines are advisory only and must be considered along with the factors set forth in 18 U.S.C. § 3553. The government's policy, however, is at odds with *Booker*. In essence, the Department of Justice continues to treat the guidelines as mandatory, by asserting that the Court has no discretion to deviate therefrom. Thus, while paying lip service to *Booker* and the statute, the government flouts the efficacy of the Supreme Court's opinion.

One of the factors that the Court is instructed to consider in fashioning a reasonable sentence is to "promote respect for the law." 18 U.S.C. § 3553(a)(2)(A). Yet, the government itself shows no respect for the rule of law when it consistently advocates a policy which ignores a specific pronouncement of our nation's highest court.

The crux of the government's position appears to be an effort to completely usurp the Court's sentencing function. The government already wields substantial authority over the sentencing process by reason of its discretion in the way it investigates, charges and prosecutes criminal conduct.[4] Now, it seeks to control the end result as well by strictly limiting the Court's discretion to a guideline sentence.[5]

Criminal behavior can fuel public outcry and drive broad legislative and executive

---

1. The government essentially controls the offense level, by reason of its undercover purchasing decisions.

2. *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

3. The government appears not to be concerned with sentences in excess of the guideline range. *See* James P. Comey, Deputy Attorney General, U.S. Dept. of Justice, *Department Policies and Procedures Concerning Sentencing*, January 28, 2005 ("DOJ Sentencing Policy Memo"). (Exhibit A at 2–4).

4. Its power over the sentencing process is also greatly enhanced by its ability to offer substantial assistance credit under U.S.S.G. 5K1.1.

5. Limiting the Court's discretion within the narrow confines of the guideline matrix does not provide the judiciary with a meaningful opportunity to impose a fair sentence as contemplated by the statute.

agendas to get "tough on crime." But how does that translate to specific instances? If you take a matrix to factor offense severity, overlay it with mandates born of popular outrage, and tailor it purportedly to address almost every eventuality, you get "justice" dictated in advance, marked by visceral condemnation, and based on the pretense of omniscience.

Under *Booker*, the sentencing guidelines no longer stand as such a mandatory ideal. In a very real sense, however, the executive branch is continuing to campaign for such a supposedly scientific equation of justice, without mentioning the wholly un-scientific and overwhelming discretion it exercises over the sums that equation produces. In that regard, the executive wants to be prosecutor and judge. And, in a display of its wisdom and qualifications for that lofty job, the executive arbitrarily claims that any sum lesser than what it contrives is unreasonable and contrary to law.

In the end, the Constitution divides certain powers of government among three very imperfect branches and sets forth prohibitions against the government abridging certain individual rights. The

judicial branch bears the duty to moderate independently the fact-specific trials and punishments rendered in federal court. The Court cannot fulfill its duty by relying exclusively on a fixed equation that sup-posedly translates generalities to unexcep-tionally reasonable and right judgments. In reality, no written law ever crafted by humans has achieved that ideal. Although some may aspire to become prosecutor-judges on the notion such an equation exists and requires but a single real opera-tor, the Constitution supplies the judicial branch as an independent check in a sys-tem prone to domination by executive dis-cretion.[6]

■ Because the government's position is contrary to *Booker* and is inconsistent with the fundamental separation of powers essential in our form of government, the Court rejects the government's argument. The Court's sentencing discretion is not limited to that sentence which the govern-ment advocates (a guideline sentence).[7] Instead, this Court will consider the guide-lines on an advisory basis in the context of the statutory factors set forth in 18 U.S.C. 3553.

The statute sets forth various factors for the Court to consider. The stated con-

---

**6.** The wisdom of vesting such power in the hands of the prosecutor should be viewed in light of recent conduct observed by this Court. *See, e.g., United States v. Lyons,* 352 F.Supp.2d 1231 (M.D.Fla.2004) (involving *Brady* violations and obstruction by a federal prosecutor); *In re Belvett,* 2005 WL 852649 (M.D.Fla.2005) (involving a prosecutor preemptively suggesting that his discretionary recommendation on a 5K1.1 sentencing de-parture was the sole measure of a just sen-tence); *United States v. Delgado,* 6:05–cr–30 (Doc. 42) (M.D.Fla.2005) (involving a prose-cutor's misuse of procedural discretion vested for a particular purpose).

**7.** In the context of sentencing, counsel for the government has abandoned its role as an offi-

cer of the Court attempting to assist the Court in reaching a just sentence. Rather, the gov-ernment seems interested only in espousing an arbitrary policy of strict adherence to the sentencing guidelines. Indeed, the govern-ment has assumed the position of an adver-sary in this regard. For example, all U.S. Attorneys have been instructed to report to Washington any judge who deviates from the guidelines. *See* DOJ Sentencing Policy Memo, *supra* note 3. And, although these forms are intended to be used to support the Department of Justice's effort to influence public policy, they are maintained in secret. This Court's request for a copy of his forms has been denied. (Exhibits B and C).

gressional goal is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute. In addition, to the nature and circumstances of the offense and the history and characteristics of the defendant, the Court must consider, *inter alia,* (1) the seriousness of the offense, (2) promotion of respect for the law, (3) just punishment for the offense, (4) deterrence to criminal conduct, and (5) protection of the public from further crimes by the defendant.

■ With respect to Williams, the Court has already alluded to the nature and seriousness of the offense and Williams' criminal history. In short, Williams is a low-level drug dealer and was convicted of selling relatively small amounts of crack cocaine. His lengthy criminal history is accounted for by his category VI criminal history.

As to a sentence that will promote respect for the law, the Court has also commented above on the disingenuous position espoused by the government which displays disrespect of the law. In addition, the Court notes that it was the government that decided to arrange a sting purchase of crack cocaine.[8] Had the government decided to purchase powder cocaine (consistent with Williams prior drug sales), the base criminal offense level would have been only 14, producing a sentencing range of 37–46 months for an offender with Williams' criminal history. Promotion of respect for the law in this case does not support a sentence within the guideline range.[9]

A guideline sentence is inappropriate for another reason. Whatever base offense level is applied, Williams' past criminal conduct has been taken into account by his category VI criminal history. Thus, an offense level 28 (his base offense level for 34 grams of crack) produces a minimum sentence of 140 months as opposed to 78 months for a first offender. Yet the layering of Chapter 4 enhancements results in a double-compounding effect, increasing Williams' minimum guideline sentence to 360 months in light of the *same* criminal conduct. This sort of arbitrary compounding results in a guideline sentence much greater than that necessary to comply with the statutory purposes. In short, a sentence of 30 years to life would not provide just punishment. Rather, such a harsh sentence would be totally out of character with the seriousness of this offense and is not necessary to afford adequate deterrence to criminal conduct or to protect the public from further crimes by this Defendant. Rather than promoting respect for the law, a guideline sentence would have the opposite effect.

In considering all of the statutory factors, including the sentencing guidelines, the Court imposes a sentence of 204 months. This is a substantial term for a relatively minor offense. But, given the circumstances (crack versus powder cocaine) and Williams' long history of selling illegal drugs, a lengthy sentence is warranted. A guideline sentence, however, is not.

Exhibit A

January 28, 2005

---

8. The Court is mindful of the substantial criticism of the sentencing disparity between powder cocaine and crack cocaine-the same drug in different forms. The Court is also aware of the evidence suggesting that this disparity has a discriminatory impact on African Americans of whom Williams is one.

9. According to the government's rationale, a life sentence would be fair, but a sentence of 359 months would be unreasonable.

TO: All Federal Prosecutors

FROM: James B. Comey

Deputy Attorney General

SUBJECT: Department Policies and Procedures Concerning Sentencing

## I. INTRODUCTION

· The past few months have been a time of change and uncertainty in federal sentencing. Federal prosecutors have had to adapt to a shifting landscape, which you have done with characteristic professionalism and dedication. I thank you and commend you for your flexibility, your creativity and your good humor in these difficult circumstances. The challenges continue. Although the Supreme Court's ruling in *United States v. Booker* answered some of the questions raised in *Blakely v. Washington,* the sentencing system will continue to be a source of debate and litigation. Throughout, we must remain focused on our principles and our mission, which are clear and enduring.

First, we must do everything in our power to ensure that sentences carry out the fundamental purposes of sentencing. Those purposes, as articulated by Congress in the Sentencing Reform Act, are to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford deterrence, to protect the public, and to offer opportunities for rehabilitation to the defendant.

Second, we must take all steps necessary to ensure adherence to the Sentencing Guidelines. One of the fundamental imperatives of the federal sentencing system is to avoid unwarranted disparity among similarly situated defendants. The Guidelines have helped to ensure consis-

tent, fair, determinate and proportional punishment. They have also contributed to historic declines in crime. We must do our part to ensure that the Guidelines continue to set the standard for federal sentencing.

## II. DEPARTMENT POLICIES AND PROCEDURES CONCERNING SENTENCING

Sentencing is a shared responsibility of the three branches of the federal government. The role of the Executive Branch is to enforce the law by bringing appropriate charges and advocating the consistent application of the Sentencing Guidelines and mandatory minimums, which reflect the judgments Congress has made about appropriate sentences for federal crimes. The following guidance is intended to help you faithfully execute that role in the wake of *Booker*.

### A. *Consistency in charging, pleas, and sentencing*

Federal prosecutors must consult the Sentencing Guidelines at the charging stage, just as federal judges must consult the Guidelines at sentencing. In order to do our part in avoiding unwarranted disparities, federal prosecutors must continue to charge and pursue the most serious readily provable offenses. As set forth in Attorney General Ashcroft's Memorandum on Department Policies and Procedures Concerning Sentencing Recommendations and Sentencing Appeals (July 28, 2003), the "most serious" readily provable offenses are those that would generate the most substantial sentence pursuant to: (1) the Guidelines; (2) one or more applicable mandatory minimums; and/or (3) a consecutive sentence required by statute. One of

the fundamental principles underlying the Guidelines is that punishment should be based on the real offense conduct of the defendant. To ensure that sentences reflect real offense conduct, prosecutors must present to the district court all readily provable facts relevant to sentencing.

### B. *Compliance with the Sentencing Guidelines*

Federal prosecutors must actively seek sentences within the range established by the Sentencing Guidelines in all but extraordinary cases. Under the Guidelines, departures are reserved for rare cases involving circumstances that were not contemplated by the Sentencing Commission. Accordingly, federal prosecutors must obtain supervisory authorization to recommend or stipulate to a sentence outside the appropriate Guidelines range or to refrain from objecting to a defendant's request for such a sentence.

### C. *Appeals of unreasonable sentences*

Federal prosecutors must preserve the ability of the United States to appeal "unreasonable" sentences. The Solicitor General will ensure that the Department takes consistent and judicious positions in pursuing sentencing appeals. Accordingly, in any case in which the sentence imposed is below what the United States believes is the appropriate Sentencing Guidelines range (except uncontested departures pursuant to the Guidelines, with supervisory approval), federal prosecutors must oppose the sentence and ensure that the record is sufficiently developed to place the United States in the best position possible on ap-

peal. If a sentence not only is below the Guidelines range, but also, in the judgment of the United States Attorney or component head, fails to reflect the purposes of sentencing, then the prosecutor should seek approval from the Solicitor General to file an appeal.

### D. *Reporting of adverse sentencing decisions*

Although the Department has not proposed or endorsed any particular action by Congress or the Sentencing Commission in the wake of *Booker*, we must continuously assess the impact of the Supreme Court's rulings based on accurate, real-time information on sentencing, in order to play an appropriate and effective role in the public debate. The existing requirements for reporting adverse decisions set forth in the U.S. Attorney's Manual remain in effect. In addition, the Executive Office for United States Attorneys is distributing instructions for reporting (1) sentences outside the appropriate Sentencing Guidelines range, and (2) cases in which the district court failed to calculate a Guideline range before imposing an unreasonable sentence. This reporting requirement applies to all United States Attorney's Offices and litigating divisions.

### III. CONCLUSION

I know how hard you work and what credit that work brings to this great institution and this country. Our job is to bring justice to criminals and for their victims. Your ability and dedication will get the job done in these challenging times.

*BOOKER SENTENCING REPORT FORM*

_____ District of _____

This form should be used if the court (a) imposes a sentence outside the appropriate Sentencing Guidelines range (unless the departure was requested by the government, for example, a 5K1.1 motion), (b) if the court refuses to calculate a range, or (c) if a 5K1.1 or a 5K3.1 motion is made but the court sentences below the government's recommended range.

This form replaces the "Blakely Sentencing Report Form," but does not replace the "Standard Form for Reporting Adverse District Court Sentencing Guidelines Decisions." If that form is required (*see* USAM § 9–2.170(B)), it should be completed and submitted separately.

| | |
|---|---|
| 1. Defendant (Last, first) | 6. Applicable guidelines range (in months) |
| 2. AUSA | 7. Actual sentence imposed (in months) |
| 3. LIONS Number or USAO Number | 8. Did the court refuse to (a) determine a guidelines range or (b) apply an enhancement warranted under the facts as found by the court? ___Yes ___No |
| 4. Court Number | 9. Sentencing Date |
| 5. Primary Offense Of Conviction (indicate only one) ___ Drugs ___ Guns/violent crime ___ Economic Crime ___ Child porn/ Exploitation ___ Immigration ___ Other (explain) _____ | 10. Was the actual sentence above or below the guidelines range? ___Above ___Below |

11. If a mandatory minimum statute applies, indicate what the minimum was: _____ Did the mandatory minimum require a sentence higher than the guideline range? ___Yes ___No

12. Please provide a brief explanation of the court's rationale for sentencing outside the range and any additional explanation which will assist in understanding the significance of the case:

_____
_____
_____
_____

Exhibit B

March 31, 2005

Paul I. Perez

Office of the United States Attorney

300 North Hogan Street, Suite 700

Jacksonville, FL 32202

Re: Booker forms

Dear Paul:

Thanks for taking the time to meet with me last week to discuss some of my concerns.

Among other things, we discussed my request for a copy of any Booker Sentencing Report forms that have been submitted to the Department of Justice pertaining to my cases. You stated that it was the department's policy to maintain these forms in confidence, and you therefore refused my request. You did indicate, however, that you would check with your supervisors in Washington to see if my request could be accommodated.

According to the memo of January 28, 2005 from Deputy AG James Comey, these

forms are intended to assist the department to assess the impact of *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), "based on accurate, real-time information in sentencing, in order to play an appropriate and effective role in the public debate." Since this information is the product of a public sentencing proceeding, and because most of this information is already compiled by the Sentencing Commission and available to the public, I do not understand the department's rationale of secrecy. It seems to me that if this information is to be used in formulating public policy, it should be transparent and available for public inspection, especially by those in a position to verify its accuracy (the judiciary).

The form itself is subject to differing interpretations. For example, it instructs U.S. attorneys to use the form if the court imposes a sentence outside the "appropriate" sentencing guideline range (unless the departure was requested by the government). But, who determines the "appropriate" guideline range? What if the AUSA disagrees with the court's calculation of the range? Why are government-requested departures not included? Isn't that a significant issue for inclusion in the "public debate"? Question No. 11 asks whether a statutory mandatory minimum required a higher sentence than the guideline range. But what about the safety valve, which specifically authorizes a lower sentence? Also, the form requires a narrative explanation of "the court's rationale for sentencing outside the range..." What if the AUSA misinterprets or misstates the court's rationale? Without transparency, the integrity of this information will be subject to question and the department's role in formulating public policy will be diminished.

The Judicial Conference Committee on Criminal Law is presently working with the U.S. Sentencing Commission to revise the Statement of Reasons form which is attached to the judgment in every criminal case. The revised form will provide more post-*Booker* detail, so that the data collected, analyzed and reported by the Commission will be complete. *See* Memorandum from Hon. Sim Lake, attached.

In sum, there appears to be no legitimate reason for the Department of Justice to collect its own data. But, if it chooses to do so, the information collected should bear public scrutiny. Otherwise, one could reasonably infer that the department is pursuing an agenda which is not necessarily consistent with the public interest. I trust, therefore, that you will reconsider my request and send to me (and any other judge who so requests) a copy of these forms.

Sincerely,

Gregory A. Presnell

GAP/tkw

cc: Hon. Sim Lake, Hon. Ricardo Hinojosa, James B. Comey

### Exhibit C

April 25, 2005

Honorable Gregory A. Presnell

United States District Court Judge

Middle District of Florida

80 North Hughey Avenue

Orlando, Florida 32801

Dear Judge Presnell:

In follow-up to our meeting in March and your recent letter to me, I forwarded

your request for copies of all Booker Sentencing Reports submitted by my Office to the Department of Justice pertaining to your sentencings. The Deputy Attorney General agrees with my decision not to disclose the Reports at this time. The Department has a legitimate interest in attempting to independently verify trends in the field—independent of Sentencing Commission reported data—with respect to sentencing. However, the Department is considering periodically disclosing certain information we are generating from the Reports. I will keep you advised of those developments.

I am available to discuss this further with you if you so desire.

Respectfully yours,

PAUL I. PEREZ

United States Attorney

cc:

Honorable James Comey

Honorable Robert McCampbell

Honorable Ronald Tenpas

Timothy Coleman, ODAG