[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11395
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:10-cr-00471-EAK-TGW-1


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

CARLOS EDUARDO ORRELLANA-ROSALES,
a.k.a. Eduardo Martinez-Sandova,
a.k.a. Eduardo Sandoval,
a.k.a. Eduardo Obaldo Martinez-Sandoval,
a.k.a. Eduardo Martinez,

                                        Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 9, 2011)

Before TJOFLAT, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Carlos Eduardo Orrellana-Rosales appeals his 52-month sentence. He received this sentence after pleading guilty to one count of re-entry of a deported alien previously convicted of a felony, in violation of 8 U.S.C. § 1326(a) and (b)(1), and one count of unlawful entry by an alien, in violation of 8 U.S.C. §§ 1325(a)(1) and 1329. Orrellana-Rosales argues on appeal that his sentence is substantively unreasonable because, he claims, the district court lengthened his term after considering the impermissible factor of his need for medical treatment. He also argues that his sentence is greater than necessary under the totality of the circumstances, including the diminished likelihood of him illegally re-entering the United States and the fact that this sentence is four times longer than any term he previously served. Each argument fails, and we affirm his sentence.

Orrellana-Rosales bears the high burden of establishing that his sentence is unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Our reasonableness review examines whether the district court abused its discretion in imposing the sentence. Gall v. United States, 552 U.S. 38, 46, 128 S. Ct. 586, 594

(2007).[1]

Orrellana-Rosales does not challenge the procedural correctness of his sentencing, so we proceed to review its substantive reasonableness in light of the record and the factors set forth in 18 U.S.C. § 3553(a).[2] Talley, 431 F.3d at 788. The ultimate question is "whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a)." Id.

In this limited scope of review, a court of appeals may vacate a sentence only if it is "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving

---

[1] Orrellana-Rosales did not raise this objection during his sentencing hearing, so we ordinarily would apply a more stringent plain error standard of review. See United States v. Bonilla, 579 F.3d 1233, 1238 (11th Cir. 2009). However, out of an abundance of caution, and because his claim is based on a comment made by the district court in a sidebar conference conducted after the court provided the parties an opportunity to object and announced sentence, we apply the abuse of discretion standard.

[2] As summarized in Talley, Section 3553(a) requires consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

431 F.3d at 786; see 18 U.S.C. § 3553(a).

3

at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case," or by arbitrarily selecting the sentence, basing the sentence on impermissible factors, or failing to consider pertinent § 3553(a) factors. United States v. Pugh, 515 F.3d 1179, 1191–92 (11th Cir. 2008) (quotation marks omitted). Although we do not automatically presume a sentence within the guideline range to be reasonable, we ordinarily expect it to be so. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) (citation omitted). Moreover, a sentence falling near the middle of the guideline range, and well below the statutory maximum, supports an argument for reasonableness. See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

Orrellana-Rosales is correct that a district court may not consider a prisoner's need for medical treatment when deciding the length of imprisonment. United States v. Vautier, 144 F.3d 756, 762 (11th Cir. 1998) superceded on other grounds by U.S.S.G. § 1B1.10(b)(1) (2008). Nor may it impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation. Tapia v. United States, 131 S. Ct. 2382, 2393 (2011); United States v. Harris, 990 F.2d 594, 596 (11th Cir. 1993); see also 18 U.S.C. § 3582(a); 28 U.S.C. § 994(k).

But Orrellana-Rosales has not met his initial burden of establishing that the

district court actually considered this impermissible factor in determining the length of his sentence. See United States v. Williams, 456 F.3d 1353, 1361 (11th Cir. 2006) abrogated on other grounds by Kimbrough v. United States, 552 U.S. 85, 128 S. Ct. 558 (2007). The district court entered the hearing aware of Orellana-Rosales's medical condition but nonetheless inclined to sentence him to the low-end of the guideline range. Only after hearing arguments from the probation officer and the government about Orrellana-Rosales's criminal history did the district court decide that a sentence in the middle of the guideline range was more appropriate. In fact, the judge specifically stated that she agreed "with probation and with the government that [Orrellana-Rosales] deserve[d] a heavier sentence than the low end of the guidelines."

The district court's only mentions of Orellana-Rosales's intestinal cancer came after she had already made clear her intent to sentence Orrellana-Rosales above the low-end due to his criminal history. The first mention came in the form of an admonition in which the judge counseled Orrellana-Rosales to "wake-up," and told him he could avoid losing time with loved ones by improving his behavior and "get[ing] a handle on [himself]," not attempting to re-enter the United States, and addressing his illness. The other mention came after the court pronounced sentence and during a sidebar with Orrellana-Rosales's counsel, in

5

which the judge said Orrellana-Rosales would "have enough time in prison to get [the intestinal cancer] properly attended to."[3]  We accept that comment as an observation about the effect of the sentence, rather than an indication of reliance upon that information in determining the duration of imprisonment.  Given the countervailing evidence, Orrellana-Rosales would need more unambiguous support in the record to convince us that the district court did, in fact, consider this impermissible factor in determining the length of his sentence.

Orrellana-Rosales also argues that his sentence is unreasonable under the totality of the circumstances, particularly in light of his asserted diminished likelihood of illegally re-entering the United States and the fact that this sentence is four times longer than any term he previously served. Given that his sentence was within the applicable guideline range and well below the statutory maximum, Orrellana-Rosales has failed to show that the sentence imposed—a sentence six months longer than the one he requested—was unreasonable as a matter of law. This is particularly true in light of his criminal history.  For these reasons, we conclude that the sentence was reasonable.

**AFFIRMED.**

---

[3] During the sidebar, defense counsel did not object to the judge's mention of Orrellana-Rosales's condition.  In fact, he thanked the court repeatedly for "dealing with that cancer" and expressed doubt that Orrellana-Rosales even had the illness.