[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15055
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20135-PCH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONNIEL LAVON KEYS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 8, 2017)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Donniel Lavon Keys appeals the 220-month sentence he received after pleading guilty to one count of sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(2).  After careful review, we affirm.

I.

In March 2013, a federal grand jury indicted Keys and his codefendant, Kebreyana Jamai Jones, with (1) one count of knowingly recruiting, enticing, and maintaining a minor in interstate commerce with knowledge that force, fraud, or coercion would be used to cause her to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), and (b)(2); (2) one count of conspiracy to commit the same in violation of 18 U.S.C. § 1594(c); and (3) one count of employing, persuading, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, with knowledge that the depiction would be transmitted in interstate commerce, in violation of 18 U.S.C. §§ 2251(a), (e), and 2.  Keys initially pled not guilty.  Then, after the government filed a superseding information, Keys pled guilty to a single count of knowingly recruiting, enticing, and maintaining a minor in interstate commerce with knowledge that she would be caused to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(2), pursuant to a plea agreement.

2

Keys's plea agreement included a factual proffer in which he admitted to the following facts.  Keys moved into a house (the "Monroe Street House") with Jones after Keys was released from a previous prison sentence.  Sometime later, Jones contacted a 16-year-old girl named D.S. through Facebook.  Jones brought D.S. to the Monroe Street House and introduced her to Keys.  At the direction of Keys and Jones, D.S. engaged in prostitution.  Keys and Jones arranged for online advertisements offering D.S. for prostitution.  They also instructed D.S. on how to conduct the prostitution dates and handle the money, although Keys and Jones ultimately kept all of the money for themselves.  Further, Keys and Jones installed a security system in the Monroe Street House.  The system included a camera to record D.S.'s actions.  On at least one occasion, the system recorded D.S. while engaging in prostitution.  At all times, Keys knew D.S. was not yet 18 years old.

The presentence investigation report ("PSR") calculated Keys's offense level in two ways.  First, it found Keys's base offense level to be 30 under United States Sentencing Guidelines ("USSG") § 2G1.3(a)(2), and assigned (1) a two-level enhancement under USSG § 2G1.3(b)(2)(B) because Keys influenced a minor to engage in prohibited sexual contact; (2) a two-level enhancement under USSG § 2G1.3(b)(3)(B) because Keys's offense involved the use of a computer to entice or solicit a person to engage in sexual conduct with a minor; and (3) a two-level enhancement under USSG § 2G1.3(b)(4)(A) because his offense involved the

3

actual commission of a sex act.  These three two-level enhancements resulted in an adjusted offense level of 36.  Second, the PSR determined Keys was a career offender under USSG § 4B1.1(a) because he had at least two earlier felony convictions for either a crime of violence or controlled substance offense.  Specifically, it identified his 1998 Florida conviction for aggravated child abuse as a crime of violence and his 2002 Florida conviction for possession with intent to sell, manufacture, or deliver cocaine as a controlled substance offense.  Keys's career offender designation alone resulted in an offense level of 37.  USSG § 4B1.1(b) instructs sentencing courts to apply "the offense level for a career offender" if it is "greater than the offense level otherwise applicable."  Thus, because Keys's career offender offense level (37) was one level higher than "the offense level otherwise applicable" (36), the PSR found his total offense level to be 37.  Based on this offense level and a criminal history category of VI, the PSR calculated Keys's guideline range to be 360 months to life.

Keys objected to the PSR on several grounds relevant to this appeal.  First, he challenged all three of the two-level enhancements under USSG §§ 2G1.3(b)(2)(B), (b)(3)(B), and (b)(4)(A).  Second, he argued the PSR incorrectly classified him as a career offender under USSG § 4B1.1(a) because (1) his 1998 aggravated child abuse conviction does not qualify as a "crime of

violence"; and (2) both of his qualifying earlier convictions were too remote in time to count as predicate offenses.

Keys also filed a sentencing memorandum requesting a downward variance under 18 U.S.C. § 3553(a). His memorandum highlighted, among other things, his difficult childhood and significant medical issues. His health issues include sickle cell disease, chronic obstructive pulmonary disease, and polyneuropathy, all of which he said "require constant doctor supervision and treatment for chronic pain."

At sentencing, the district court overruled Keys's objections to his sentence enhancements under USSG §§ 2G1.3(b)(2)(B), (b)(3)(B), and (b)(4)(A). The court then overruled both of his challenges to his career offender status. Next, the district court considered Keys's request for a downward variance. It noted for the record that "Keys has had some issues . . . particularly dealing with his pain and suffering he goes through as a result of the sickle cell disease." The court also stated that it "reviewed [the medical records] and will take th[em] into consideration in considering all the factors under Section 3553." The district court then calculated Keys's total offense level to be 34 after applying a three-level reduction for accepting responsibility. This offense level, along with a criminal history category of VI, resulted in a guideline range of 262 to 327 months. Finally, the court heard arguments about Keys's specific sentence. The government emphasized the seriousness of Keys's offense and his history of violent criminal

5

behavior. It recommended a 327-month sentence. Keys argued for a 120-month sentence—the statutory minimum. He highlighted his medical issues and the fact that he was sexually abused as a child. He also pointed out this was not a typical human trafficking case because it did not involve young children kidnapped from foreign countries. The district court agreed Keys "had at least two strikes against him coming into this world" and that "this may not be the typical human trafficking conspiracy," but also remarked that Keys's crime and his criminal history indicated "he has a very violent nature to people who are vulnerable."

Eventually, the district court sentenced Keys to 220-months imprisonment. It acknowledged the advisory guidelines range and stated it "considered the statutory factors which are all set forth in . . . 18 [U.S.C. §] 3553(a)." The court then weighed the nature of Keys's crime and his "substantial history of violence" against his "personal history and how he got started in life." It also stated "there is some proportionality that needs to be considered" and "protecting society in the future is a very important factor in this case." Because the court felt "the guidelines overstate the matter here," it concluded that taking "the 3553(a) factors into consideration," a below-guidelines sentence was appropriate.

## II.

On June 26, 2015, after the parties completed appellate briefing, the Supreme Court decided Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551

(2015).  In Johnson, the Supreme Court held that the "residual clause" in the

Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is

unconstitutionally vague.  Id. at 2557.  This Court directed the parties to file

supplemental briefs to answer several questions about whether Johnson impacted

Keys's appeal.  However, after the parties filed their supplemental briefs, the

Supreme Court decided Beckles v. United States, 580 U.S. ___, 137 S. Ct. 886

(2017).  Beckles held that "the advisory Guidelines are not subject to vagueness

challenges under the Due Process Clause."  Id. at 890.

In light of Beckles, we now know Johnson does not affect Keys's appeal.

That's because the only sentence enhancements Keys received—including his

career offender designation based in part on an earlier "crime of violence"

conviction—were under the advisory guidelines.  Thus, Keys cannot bring a void-

for-vagueness due process challenge against any of his enhancements.

III.

Keys first argues his sentence is both procedurally and substantively

unreasonable.  We review the reasonableness of a sentence for abuse of discretion.

United States v. Moran, 778 F.3d 942, 959 (11th Cir. 2015).

A.

In reviewing whether a sentence was procedurally unreasonable, we must

"ensure that the district court committed no significant procedural error, such as

7

failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008) (quotation omitted). When considering the § 3553(a) factors, the district court is not required to explicitly discuss each factor. Instead, it is "sufficient that the district court considers the defendant's arguments at sentencing and states that it has taken the § 3553(a) factors into account." United States v. Sanchez, 586 F.3d 918, 936 (11th Cir. 2009).

Keys says his sentence was procedurally unreasonable because the district court "did not expressly state it considered the applicable guideline range or any of the § 3553 factors." The record shows otherwise. At sentencing, the district court correctly calculated a guideline range of 262 to 327 months. Then, it said this range "overstate[d] the matter here." Finally, the court concluded that "tak[ing] all . . . the 3553(a) factors into consideration, I think lower than the guideline range is appropriate." Thus, the district court (1) explicitly considered Keys's guideline range; and (2) expressly stated it had taken the § 3553 factors into account when it sentenced Keys. See Sanchez, 586 F.3d at 936. As a result, Keys's sentence was not procedurally unreasonable.

8

B.

For substantive reasonableness, we review Keys's sentence in light of the totality of the circumstances and the "purposes of sentencing stated in § 3553(a)." Moran, 778 F.3d at 982 (quotation omitted).  The § 3553(a) factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the applicable guideline range; and the need to reflect the seriousness of the offense, deter criminal conduct, and protect the public from the defendant's future crimes.  See 18 U.S.C. § 3553(a).  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court," but "we will remand for resentencing if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006), abrogated on other grounds by Kimbrough v. United States, 552 U.S. 85, 128 S. Ct. 558 (2007).

Keys argues his sentence was substantively unreasonable because of his significant health issues.  However, to arrive at its below-guideline sentence, the district court considered Keys's health problems along with his difficult childhood, and weighed them against his violent criminal history, the seriousness of his offense, and the need to protect society from his future criminal conduct.  And

9

because the district court did consider his health issues at sentencing, Keys is essentially arguing that the district court did not accord his health problems enough weight when it considered all the § 3553(a) factors. However, the weight given to any particular factor is "committed to the sound discretion of the district court" unless the court's weighing constituted a "clear error of judgment" that resulted in a sentence "outside the range of reasonable sentences." Williams, 456 F.3d at 1363. On this record, we cannot say the district court's sentence was outside the range of reasonableness.

Keys also says his sentence was substantively unreasonable because his career offender designation resulted in an unduly punitive sentence. But the district court expressly acknowledged that Keys's high guideline range—which was in part a product of his career offender enhancement—"overstate[d] the matter here." In light of the harshness of his guideline range and other factors, the court varied Keys's sentence downward from the low end of the guideline range (262 months) to 220 months. Once again, on this record, we cannot say the district court committed a "clear error of judgment" by failing to take an even greater downward departure from Keys's guideline range.[1] Williams, 456 F.3d at 1363.

---

[1] Keys also appears to argue he is not a career offender under USSG § 4B1.1(a) because (1) his 1998 Florida conviction for aggravated child abuse did not qualify as a "crime of violence"; and (2) both of his qualifying earlier convictions were too remote in time to be counted as predicate offenses. However, he does not provide any arguments or case law to support either claim. Because there are no arguments regarding the propriety of Keys's career offender enhancement for us to consider, we affirm the district court as to this issue.

10

IV.

Second, Keys argues the district court erred in applying two-level enhancements under USSG § 2G1.3(b)(2)(B) (for unduly influencing a minor to engage in prohibited sexual conduct) and USSG § 2G1.3(b)(3)(B) (for using a computer to solicit a person to engage in prohibited sexual conduct with a minor). However, even assuming the district court erroneously applied these sentence enhancements, any errors were harmless.  Because Keys was sentenced as a career offender, his total offense level would have remained the same even if he had not received these enhancements.[2]  As a result, we affirm the district court.

**AFFIRMED.**

---

[2] To be specific, Keys's offense level without the two enhancements (and before the three-level acceptance-of-responsibility reduction) would have been 32 (instead of 36 with the enhancements).  Once again, USSG § 4B1.1(b) instructs sentencing courts to apply "the offense level for a career offender" if it is "greater than the offense level otherwise applicable."  Because Keys's career offender offense level (37) would have remained higher than "the offense level otherwise applicable" (32), Keys's offense level would not have changed—his pre-reduction offense level would have remained at 37, yielding the same final offense level of 34 and the same guideline range of 262 to 327 months.